**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
*(Electronically Filed)*

| | |
|---|---|
| **STEPHANIE SWEENEY,** | ) |
| | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) **Case No.** 3:25-cv-702-RGJ |
| **VETERANS AFFAIRS, DOUGLAS A.** | ) |
| **COLLINS,** | ) |
| | ) |
| **To Serve:** | ) |
| | ) |
| Civil-Process Clerk for Kyle G. Bumgarner | ) |
| United States Attorney's Office | ) |
| for the Western District of Kentucky | ) |
| 717 West Broadway | ) |
| Louisville, KY 40202 | ) |
| | ) |
| Pamela Bondi, U.S. Attorney General | ) |
| U.S. Department of Justice | ) |
| 950 Pennsylvania Avenue, NW | ) |
| Washington, D.C. 20530-0001 | ) |
| | ) |
| U.S. Department of Veterans Affairs | ) |
| 810 Vermont Avenue, NW | ) |
| Washington, D.C. 20420 | ) |
| | ) |
| Douglas A. Collins, Secretary | ) |
| U.S. Department of Veterans Affairs | ) |
| 810 Vermont Avenue, NW | ) |
| Washington, D.C. 20420 | ) |
| **Defendant.** | ) |

---

## COMPLAINT

---

Plaintiff, Stephanie Sweeney, by counsel, for her Complaint against Defendant, United States Department of Veterans Affairs, Douglas A. Collins ("Secretary Collins"), states as follows:

## I.  JURISDICTION AND VENUE

1.  Plaintiff seeks damages from Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et. seq.*, for discrimination based on her race (Black), retaliation for participating in protected EEO activity, and for hostile work environment harassment based on her race (Black) and retaliatory harassment for her protected EEO activity. Accordingly, this Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§1331 and 1343.

2.  Pursuant to 28 U.S.C. § 1391(e), venue is proper in the Western District of Kentucky, Louisville Division, because a substantial part of the events or omissions giving rise to the claim occurred at the Robley Rex VA Medical Center, which is located in Louisville, Kentucky.

## II.  PARTIES

3.  Plaintiff, Stephanie Sweeney, at all times relevant to this Complaint, was a resident of Louisville, Jefferson County, Kentucky. Plaintiff was an employee of the U.S. Department of Veterans Affairs from on or about April 20, 2020 until July 8, 2025. For the entirety of her employment with Defendant, Ms. Sweeney's assigned duty location was the Robley Rex Va Medical Center located at 800 Zorn Avenue, Louisville, Kentucky 40206.

4.  Defendant, U.S. Department of Veterans Affairs, is an independent agency of the Executive Branch of the United States government responsible for providing medical care and benefits, including burial services and benefits, earned by our Nation's veterans.

5. Secretary Collins is the Secretary of the U.S. Department of Veterans Affairs, a federal agency, and is responsible for overseeing the mission of the U.S. Department of Veterans Affairs (hereinafter referred to interchangeably as "Defendant" or "Agency").

6. Defendant's headquarters is located at 810 Vermont Avenue, NW, Washington, D.C. 20420.

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff is a federal employee and was employed by the Department of Veterans Affairs as a permanent employee during all times relevant to this Complaint.

8. Plaintiff has exhausted her administrative remedies as required and set forth under the procedures of 29 C.F.R. § 1614, *et. seq. See Final Agency Decision,* dated July 29, 2025, attached as **Exhibit A**.

9. Plaintiff's Complaint is timely because it is filed within ninety (90) days of Plaintiff's receipt of the Agency's Final Action which was on August 4, 2025. *See* **Exhibit A**, p. 18.

### IV.   FACTUAL ALLEGATIONS

10. Plaintiff, Stephanie Sweeney ("Ms. Sweeney"), adopts and incorporates the above allegations as if set forth fully herein.

11. On or about April 20, 2020, Ms. Sweeney was appointed as a Medical Supply Technician (Sterile Processing Service), GS-7, Step 1, at the Robley Rex Va Medical Center in Louisville, KY.

12. As a medical supply technician, Ms. Sweeney's primary duties and responsibilities included sterilizing medical instruments used by care providers at the Robley Rex VA Medical Center.

13.     On or about July 2021, Ms. Sweeney was promoted to Lead Medical Supply Technician (Sterile Processing Service), GS-8.

14.     Ms. Sweeney is a Black female.

15.     During all times relevant to this Complaint, Ms. Sweeney's first line supervisor was Wesley Gillam, Supervisor, Sterile Processing Service ("SPS"). Supervisor Gillam is a white male.

16.     During all times relevant to this Complaint, Ms. Sweeney's second-line supervisor was Stanley Kerr, Assistant Chief SPS. Assistant Chief Kerr is a White male.

17.     During all times relevant to this Complaint, Ms. Sweeney's third-line supervisor was Angela Tomes, Chief, SPS. Chief Tomes is a white female.

18.     During all times relevant to this Complaint, Jo-Ann Ginsberg was the Medical Center Director of the Robley Rex VA Medical Center. Director Ginsberg is a white female.

19.     During all times relevant to this Complaint, Supervisors Gillam, Tomes, Kerr, and Ginsberg were aware of Ms. Sweeney's race and her protected EEO activity.

### A) *Ms. Sweeney's Formal Complaint of Discrimination, Harassment, And Reprisal*

20.     On November 14, 2025, Ms. Sweeney initiated contact with an EEO counselor assigned to her facility to file an informal EEO complaint against SPS management officials.

21.     On November 15, 2025, Ms. Sweeney had her first interview with EEO counselor, Serge Mouche.

22.     In her informal EEO complaint, Ms. Sweeney complained that on October 21, 2023, Supervisor Gillam discriminated against her because of her Race (Black) when he charged her with AWOL for being tardy and accused her of "lying about being sick." Ms. Sweeney also complained that on November 6, 2023, Supervisor Gillam denied Ms. Sweeney's sick leave request and charged 1 hour and 15 minutes to AWOL because she is Black.

4

23.    As part of the informal EEO process, notification of Ms. Sweeney's EEO complaint was sent to Director Ginsberg on November 22, 2023.

24.    As part of the informal EEO process, Counselor Mouche contacted Supervisor Gillam to discuss Ms. Sweeney's complaint and the possibility of the Agency reaching a resolution with Ms. Sweeney. Counselor Mouche's discussion with Supervisor Gillam occurred on December 4, 2023 and on that date, Supervisor Gillam gained direct knowledge of the scope and nature of Ms. Sweeney's EEO complaints against him.

25.    Since Ms. Sweeney's EEO complaint could not be resolved during the informal process, on or around December 13, 2023, Ms. Sweeney received notice of her right to file a formal complaint.

26.    On December 13, 2023, Ms. Sweeney timely filed a formal EEO complaint with the Agency.

27.    On January 17, 2024, Ms. Sweeney received a Notice of Partial Acceptance letter from the Agency.

28.    In the Notice, the Agency notified Ms. Sweeney that the following claims were accepted for investigation as timely the following claims:

> Whether the complainant was subjected to a hostile work environment, based on race (African American) and reprisal (EEO Activity), as evidenced by the following event(s):
>
> (1) From November 1, 2023, to December 21, 20231, Wesley Gilliam, Supervisor, and/or other facility personnel subjected complainant to the following: verbal (and in writing) criticisms, disrespect, and disruptions to workflow.
>
> (2) From November 1, 2023, to December 21, 20232, Wesley Gilliam, and/or facility personnel charged complainant AWOL (absent without leave).

(3) On December 5, 2023, complainant's November 21st FMLA (Family Medical Leave Act) filing was denied due to "not meeting criteria."

(4) On December 14, 2023, Wesley Gilliam, and/or facility personnel, denied complainant's request to collect overtime for staying over on December 7, 2023.

(5) On December 19, 2023, Wesley Gilliam, and/or facility personnel, subjected complainant to a "fact finding".

(6) On December 20, 2023, Wesley Gilliam, and/or facility personnel, issued complainant a Written Counseling.

29. Over a series of several months, the Agency investigated Ms. Sweeney's formal complaint.

30. During the Agency's investigation, several witnesses were interviewed and the final investigative report is over 1,000 pages.

31. During the Agency's investigation, Ms. Sweeney continued to be harassed and retaliated against by SPS management. Therefore, her complaint was amended to include additional claims.

32. Supervisor Gillam completed multiple EEO affidavits dated July 3, 2024, August 4, 2024, and therefore, had direct knowledge of the scope and nature of Ms. Sweeney's December 2023 EEO complaint (and subsequent amended claims) which involved multiple claims against him.

33. Chief Tomes completed multiple EEO affidavits dated July 3, 2024 and August 21, 2024, and therefore, had direct knowledge of the scope and nature of Ms. Sweeney's December 2023 EEO complaint (and subsequent amended claims) which involved multiple claims against her.

34.    Ultimately, the Agency accepted and investigated the following claims filed by Ms. Sweeney:

Whether the complainant was subjected to a hostile work environment, based on race (African American) and reprisal (EEO Activity), as evidenced by the following event(s):

(1) From November 1, 2023, to December 21, 2023, Wesley Gilliam, Supervisor, and/or other facility personnel subjected complainant to the following: verbal (and in writing) criticisms, disrespect, and disruptions to workflow.

(2) From November 1, 2023, to December 21, 2023, Wesley Gilliam, and/or facility personnel charged complainant AWOL (absent without leave).

(3) On December 5, 2023, complainant's November 21st FMLA (Family Medical Leave Act) filing was denied due to "not meeting criteria."

(4) On December 14, 2023, Wesley Gilliam, and/or facility personnel, denied complainant's request to collect overtime for staying over on December 7, 2023.

(5) On December 19, 2023, Wesley Gilliam, and/or facility personnel, subjected complainant to a "fact finding".

(6) On December 20, 2023, Wesley Gilliam, and/or facility personnel, issued complainant a Written Counseling."

(7) On January 10, 2024, Wesley Gilliam and/or Stanley Kerr, Jr., Supervisory General Supply Specialist, issued Complainant a Proposed Notice of Reprimand.

(8) On January 30, 2024, Angela Tomes, Chief, Sterile Processing Service, issued Complainant a Letter of Reprimand.

(9) On March 29, 2024, Wesley Gilliam "wrote Complainant up for repeatedly asking her to put on shoe covers".

(10) On May 2, 2024, Angela Tomes charged Complainant Absent Without Leave (AWOL).

(11) On May 16, 2024, Wesley Gilliam, charged Complainant AWOL.

(12) On May 20, 2024, Wesley Gilliam, harassed Complainant about her face shield, Complainant complained directly to Stanley Kerr about this, he admitted that Mr. Gilliam has mentioned that Complainant had reported him to the EEO again.

(13) On June 12, 2024, Angela Tomes, issued Complainant a Proposed Suspension.

(14) Effective July 11, 2024, Debra Hunt, Associate Director Patient Care Service/Nurse Executive, suspended Complainant for fourteen (14) days.

### *Factual Allegations for Event (1)*

35.    As it relates to Event (1) listed above, on or around October 31, 2023, Supervisor Gillam yelled at Ms. Sweeney in front of her coworkers demanding that she "logon" to a virtual meeting even though he knew she was "dressing out" of her decontamination equipment.

36.    As it relates to Event (1) listed above, on December 18, 2023, EEO Manager Mike Shadel retaliated against Ms. Sweeney by purposefully providing Ms. Sweeney with misinformation regarding the deadline to file her formal EEO complaint.

37.    As it relates to Event (1) listed above, on December 19, 2023, Supervisor Gillam falsely reported to Chief Tomes that Ms. Sweeney placed an envelope containing a drawing of a bullet in a sterilized instrument set. Supervisor Gillam knew that this allegation was false since another employee had already admitted to management that he placed the envelope with the drawing in the sterilization set.

### *Factual Allegations for Event (2)*

38.    As it relates to Event (2) listed above, on November 3, 2023, Supervisor Gillam charged Ms. Sweeney AWOL for 1 hour and 15 minutes. On that day, Ms. Sweeney arrived to the facility ready to report for duty prior to her shift beginning at 3:30 p.m. Ms. Sweeney's medical

condition began to flare up and she had to use the restroom. When Ms. Sweeney reported for work, she promptly requested sick leave which was denied.

39.     On December 7, 2023, Ms. Sweeney reported to work six minutes late. Supervisor Gillam charged Ms. Sweeney AWOL for 15 minutes and denied her request for a 15 minute grace period. SPS management has the discretion to grant employees a 15 minute grace period and SPS management routinely denies such requests from Black employees (including Ms. Sweeney) while granting similar requests for white employees. Since her request for a grace period was denied, Ms. Sweeney submitted a request for compensatory time which was initial approved by Assistant Chief Kerr and then denied by Supervisor Gillam on December 4, 2023 right after Supervisor Gillam was put on notice of Ms. Sweeney's EEO complaint.

### *Factual Allegations for Event (3)*

40.     On December 5, 2023, Human Resources Officer Erika Phillips and SPS management rejected Ms. Sweeney's request for protected leave under the Family Medical Leave Act ("FMLA") based on "insufficient criteria." Therefore, Ms. Sweeney was marked AWOL by SPS management during the period that her request for FMLA was pending.

41.     In denying Ms. Sweeney's request, HRO Phillips alleged that Ms. Sweeney's doctor's note was not sufficient to meet the Agency's FMLA guidelines. Ms. Sweeney resubmitted her request with a new doctor's note and her request was accepted.

42.     The Agency deviated from its policies when it marked Ms. Sweeney AWOL before allowing her at least 15 days to resubmit her documentation after denial of her request. This deviation from policy was because of Ms. Sweeney's Race and EEO activity.

43.    Ms. Sweeney complained on December 17, 2023 to Agency human resources officials Brad Meskimen, Daniel Pacheco, and Jeffrey Ralston that her December 5, 2023 FMLA denial was because she is Black and because she has engaged in protected EEOC activity.

*Factual Allegations for Event (4)*

44.    In the morning of December 7, 2023, Ms. Sweeney stayed 15 minutes after the end of her tour of duty to attend a meeting with Assistant Chief Kerr. When Ms. Sweeney came back into work in the evening of December 7, 2023, she was 15 minutes late. However, management refused to allow Ms. Sweeney to collect overtime or to swap her time to account for being 15 minutes late.

45.    Ms. Sweeney complained to Assistant Chief Kerr about being marked AWOL. Assistant Chief Kerr initially told Ms. Sweeney that she could swap her time to avoid being marked AWOL. However, Chief Tomes denied Ms. Sweeney's request.

46.    Assistant Chief Kerr then told Ms. Sweeney to request overtime. Ms. Sweeney's request for overtime was also denied by Chief Tomes.

47.    Assistant Chief Kerr agreed that Ms. Sweeney would normally be approved for overtime she since worked an extra 15 minutes.

48.    Chief Tomes denied Ms. Sweeney's leave and overtime requests because of Ms. Sweeney's Race and protected EEO activity.

49.    Ms. Sweeney complained on December 17, 2023 to Agency human resources officials Brad Meskimen, Daniel Pacheco, and Jeffrey Ralston that her request for overtime was denied because she is Black and because she has engaged in protected EEOC activity. In her December 17 complaint, Ms. Sweeney also generally complained that Supervisor Gillam was discriminating against her because of her race and her EEO activity.

10

### Factual Allegations for Event (5)

50.     After an envelope containing a drawing of a bullet was found in Ms. Sweeney's sterilized set on December 19, 2023, Chief Tomes initiated a fact-finding against Ms. Sweeney even though another employee already admitted to engaging in this misconduct.

51.     Chief Tomes initiated this investigation because Ms. Sweeney is Black and because of Ms. Sweeney's protected EEO activity.

### Factual Allegations for Event (6)

52.     On December 20, 2023, Ms. Sweeney received a written counseling from Supervisor Gillam.

53.     As basis for the written counseling, Supervisor Gillam alleged that Ms. Sweeney failed to follow procedures related to scanning sterilization sets.

54.     Ms. Sweeney did not fail to follow scanning procedures as outlined in the SPS standard operating procedures ("SOP").

### Factual Allegations for Events (7) and (8)

55.     On January 10, 2024, Ms. Sweeney received a proposed written reprimand from Assistant Chief Kerr. The proposed reprimand included allegations that Ms. Sweeney was AWOL for 15 minutes on December 7, 2023, that she was AWOL on November 3, 2023, and that she failed to follow instructions on December 13, 2023 regarding a request to provide medical documentation.

56.     When proposing this reprimand, Assistant Chief Kerr stated that he was just doing what he was told to do as he had previously been suspended for defending Ms. Sweeney.

57.     The January 10, 2024 proposed reprimand was wholly without basis and Ms. Sweeney was subjected to treatment that was disparate from her non-Black co-workers in being issued the reprimand.

11

58.    Assistant Chief Kerr issued the proposal despite the fact that Ms. Sweeney had received approved comp time and/or utilized FMLA leave for the allegations of AWOL included in the reprimand.

59.    Ms. Sweeney provided a written response to the proposal in which she challenged all of the allegations of misconduct against her and included in her response complaints that she was being subjected to discrimination and retaliation because of her Race and protected EEO activity. This response was provided to the deciding official, Chief Tomes.

60.    Despite the lack of evidence in support of reprimanding Ms. Sweeney and Ms. Sweeney's complaints that she was being discriminated against and retaliated against by SPS management, Chief Tomes decided to uphold the proposal to reprimand Ms. Sweeney on January 30, 2024.

61.    To Ms. Sweeney's knowledge, Chief Tomes took no steps to investigate any of Ms. Sweeney's complaints of discrimination and retaliation.

### *Factual Allegations for Event (9)*

62.    On March 29, 2024, Supervisor Gillam wrote Ms. Sweeney up based on an allegation that he had to "repeatedly" tell her to put shoe covers on.

63.    Supervisor Gillam did not have to "repeatedly" tell Ms. Sweeney to put on shoe covers as she immediately went to put on shoe covers after Supervisor Gillam asked her to do so.

### *Factual Allegations for Event (10)*

64.    On May 2, 2024, Chief Tomes charged Ms. Sweeney AWOL for three and a half hours despite the fact that Ms. Sweeney properly requested sick leave and received verbal confirmation that her request for sick leave was approved.

*Factual Allegations for Event (11)*

65.    On May 16, 2024, Supervisor Gillam charged Ms. Sweeney AWOL for three hours on May 10, 2024.

66.    Supervisor Gillam charged Ms. Sweeney AWOL despite Ms. Sweeney properly following "call out" procedures because of a gas leak at her home.

*Factual Allegations for Event (12)*

67.    On May 20, 2024, Ms. Sweeney was working in the decontamination area. While in the decontamination area, Ms. Sweeney was fully dress in PPE. As she was leaving the decontamination area, she removed her face shield consistent with SPS procedures.

68.    Despite being fully dressed in her PPE while in the decontamination area, Supervisor Gillam yelled at Ms. Sweeney and accused her of not wearing a face shield.

69.    Ms. Sweeney complained about Supervisor Gillam's behavior to Assistant Chief Kerr. Assistant Chief Kerr told Ms. Sweeney that Supervisor Gillam told him to write Ms. Sweeney up for allegedly not wearing her PPE in the decontamination area. Assistant Chief Kerr also stated that Supervisor Gillam mentioned that Ms. Sweeney had filed an EEO complaint against him again.

*Factual Allegations for Events (13) and (14)*

70.    On June 12, 2024, Chief Tomes issued Ms. Sweeney a proposal to suspend her for a period of fourteen (14) days.

71.    The proposed suspension was based on allegations that Ms. Sweeney was AWOL on multiple occasions and that she failed to follow instructions/policies. The 14-day suspension included five charges and six specifications. The charges and specifications were either clearly

unsubstantiated and/or multiple witnesses confirmed that Ms. Sweeney was subjected to disparate treatment from her white and non-Black co-workers when she received the suspension.

72. On June 24, 2024, Ms. Sweeney submitted a written reply to the proposed suspension to deciding official Dr. Debra Hunt, ADPCS/Nurse Executive.

73. In her reply, Ms. Sweeney challenged the Agency's alleged evidence against her and the reasonableness of the proposed penalty of suspension. Ms. Sweeney also argued that the Agency's action against her was motivated by discriminatory and retaliatory animus.

74. On June 27, 2024, Dr. Hunt upheld the proposal to suspend Ms. Sweeney for a period of fourteen (14) days. To Ms. Sweeney's knowledge, Dr. Hunt did not initiate an investigation into Ms. Sweeney's allegations that she was being discriminated against because of her Race and retaliated against because of her EEO activity.

### B. Ms. Sweeney's Removal from Federal Service & Report of Investigation Evidence

75. On or about May 4, 2025, Ms. Sweeney took a voluntary demotion to a GS-7 position due to the stress of the hostile work environment she was experiencing.

76. On or about May 27, 2025, Angela Tomes proposed Ms. Sweeney's removal from federal service.

77. On or about June 17, 2025, Ms. Sweeney filed a written reply to the proposed removal. The proposed removal included two charges and five specifications. The charges and specifications were either clearly unsubstantiated and/or subjected Ms. Sweeney to disparate treatment and discipline than her white and non-Black co-workers.

78. In her Reply to the proposed removal, Ms. Sweeney outlined the evidence in her possession that Chief Tomes' proposal to remove her from federal service was motivated by discriminatory and retaliatory animus.

14

79. Specifically, Ms. Sweeney cited the sworn testimony that Assistant Chief Kerr provided when completing an affidavit for her EEO case. Assistant Chief Kerr testified that Supervisor Gilliam referred to Ms. Sweeney by the racially derogatory term "thug."

80. Assistant Chief Kerr also testified throughout his affidavit that he believes Chief Tomes and Supervisor Gilliam treat Black employees differently and held them to a different standard by disciplining them for issues that they do not for white employees who engage in the same or similar conduct.

81. In addition to Assistant Chief Kerr's testimony, Ms. Sweeney cited testimony from two Black Sterile Processing employees, Brandon Cobb and Kianna Miller, who testified that Supervisor Gilliam treats Black employees differently than non-Black employees and that Supervisor Gilliam was dishonest when he reported that he had to tell Ms. Sweeney to put on PPE repeatedly (a report which led to Ms. Sweeney being disciplined).

82. Further, Ms. Miller testified that management targets Black employees. Ms. Miller and Mr. Cobb both testified that they believed Supervisor Gilliam's actions towards Ms. Sweeney and other SPS Black employees is motivated by discriminatory and retaliatory animus.

83. On or about June 18, 205, Ms. Sweeney, through counsel, also provided an oral reply to Director Ginsberg, who was the deciding official for the removal. Therefore, during the reply meeting, Director Ginsberg was put on notice (in addition to the notice she received in the written reply) that the proposed removal was motivated by discriminatory and retaliatory animus because she is a Black woman and because of her EEO activity.

84. On or about July 2, 2025, Director Ginsberg her decision removing Ms. Sweeney from federal service effective July 8, 2025.

85.    As a result of the discrimination, retaliation, and hostile work environment that Ms. Sweeney experienced, she has suffered loss of wages, salary, employment benefits, or other compensation, as well as emotional and psychological pain and suffering in the form of emotional distress, depression, anxiety, embarrassment, humiliation, and mental anguish.

## V. CAUSES OF ACTION

### COUNT I. VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. 2000e, *et. seq.*: RACE DISCRIMINATION, & HOSTILE WORK ENVIRONMENT

86.    Plaintiff adopts and incorporates the above allegations as if set forth fully herein.

87.    Plaintiff is a member of a protected class based on her race (Black).

88.    Plaintiff was subjected to discrimination based on race by Defendant's management officials with supervisory authority over her, namely Supervisors Wesley Gilliam and Angela Tomes. This discrimination consisted of discrete acts and adverse employment actions. These discrete acts and omissions include but are not limited to the acts identified in the preceding paragraphs.

89.    The acts and omissions described above subjected Plaintiff to discriminatory intimidation, ridicule, and insult of such severity or pervasiveness as to alter the conditions of her employment and create an abusive working environment.

90.    The conduct at issue, the discrete acts of discrimination and the hostile work environment, were motivated by Plaintiff's membership in a protected class.

91.    As described above, the actions and omissions that Plaintiff was subjected to constituted discrimination and a hostile environment within the meaning of Title VII.

92.    After Plaintiff complained about the discrimination to the Defendant's management officials and initiated an EEO complaint, the Defendant's management officials not only failed to

take appropriate remedial action and investigate, but subjected her to further discrimination and reprisal as described above.

93.     The Defendant had both actual and constructive knowledge of the race discrimination and hostile work environment. Additionally, since the discrimination and hostile work environment was created and fostered by Defendant's management officials with supervisory authority and/or her actual supervisors, liability is imputed to the Defendant.

94.     Based on the conduct described in the preceding paragraphs, the Defendant unlawfully discriminated against Plaintiff, including subjecting her to a hostile work environment and discrete acts of discrimination, including adverse employment actions, because of her race and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et. seq.*

95.     As a direct and proximate result of the Defendant's violations of Title VII, Plaintiff has suffered loss of wages, salary, benefits, and emotional and psychological pain and suffering in the form of emotional distress, embarrassment, humiliation and mental anguish such that she is entitled to compensatory damages, interest, expenses, and court costs in an amount greater than the minimum jurisdiction of this Court.

96.     Pursuant to Title VII, the Defendant is liable to Plaintiff for Plaintiff's costs and reasonable attorney's fees incurred herein.

### COUNT II. VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. 2000e, *et. seq.*: RETALIATION

97.     Plaintiff adopts and incorporates the above allegations as if set forth fully herein.

98.     Plaintiff is a member of a protected class because she engaged in protected activity.

99.     Plaintiff engaged in protective activity as identified in the preceding paragraphs by filing an EEO complaint and notifying management of the discrimination she was experiencing. = Ms. Sweeney complained to management multiple times (verbally and in writing) about the

harassment/hostile work environment and retaliation. For example, Ms. Sweeney filed prior EEO complaints on or around September 1, 2022 and November 11, 2023; Ms. Sweeney made a verbal complaint via telephone to Chief Tomes on April 22, 2022 and told her that she felt harassed by Supervisor Gilliam; Ms. Sweeney verbally complained to Chief Tomes during a meeting with lead technicians Jennifer Hay Hernandez, Shequita High, Jackie Spencer, and Rusty Bower on May 2, 2022 and July 11, 2022; Ms. Sweeney complained in writing to Chief Tomes on November 20, 2023; and Ms. Sweeney complained via email to Human Resources contacts Daniel Pacheco and Brad Meskimen on December 17, 2023. Ms. Sweeney also complained through her written and oral responses to the disciplinary actions taken against her as described herein.

100.    After Plaintiff complained about the race discrimination and reprisal to the Defendant, the Defendant not only failed to take appropriate remedial action and investigate, but engaged in further acts of retaliation culminating in Plaintiff's termination.

101.    The Defendant had both actual and constructive knowledge of legally protected EEO activity and the complaints of discrimination.

102.    After Plaintiff engaged in protected activity, Plaintiff was subjected to discrete acts of retaliatory harassment, including but not limited to those identified in the preceding paragraphs, by Defendant's management officials, including but not limited to Wesley Gilliam, Angela Tomes, and Director Ginsberg.

103.    As a result of her protected activity, Plaintiff was subjected to the acts and omissions described in the preceding paragraphs, including, but not limited to, disciplinary action and removal from her position.

18

104.    The discrete acts and omissions identified herein, including but not limited to the hostile work environment, are materially adverse because they are likely to dissuade employees from complaining or assisting in complaints about discrimination.

105.    Additionally, the retaliatory harassment, acts, and omissions Plaintiff experienced subjected her to discriminatory intimidation, ridicule, and insult of such severity or pervasiveness as to alter the conditions of her employment and create an abusive working environment.

106.    There is a causal connection between Plaintiff's protected activity and the adverse actions and hostile work environment she experienced.

107.    Based on the conduct described in the preceding paragraphs, the Defendant unlawfully retaliated against Plaintiff, including subjecting her to a hostile work environment, because of her protected EEO activity and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et. seq.*

108.    As a direct and proximate result of the Defendant's violations of Title VII, Plaintiff has suffered loss of wages, salary, benefits, and emotional and psychological pain and suffering in the form of emotional distress, embarrassment, humiliation and mental anguish such that she is entitled to compensatory damages, interest, expenses, and court costs in an amount greater than the minimum jurisdiction of this Court.

109.    Pursuant to Title VII, Defendant is liable to Plaintiff for Plaintiff's costs and reasonable attorney's fees incurred herein.

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

    A. Judgment in Plaintiff's favor against Defendant and an award of damages in an amount that will fairly and reasonably compensate Plaintiff;

B. An award of attorney fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 2000e-5(k), and any other applicable law;

C. A trial by jury on all issues so triable; and

D. All other relief to which Plaintiff may be entitled.

Respectfully submitted,

**COUNSEL FOR PLAINTIFF:**

*/s/ Andrew C. Weeks*
Andrew C. Weeks
Whitney Railey
Legal Justice at Work, PLLC
609 W Main St, Ste 301
Louisville, KY 40202
Phone: (502) 408-6173/(404) 313-3362
Fax: (502) 586-7176
acweeks@legaljusticeatwork.com
wrailey@legaljusticeatwork.com